IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **UNITED STATES OF AMERICA, FOR THE USE AND BENEFIT OF:** | ) ) ) |
| **ABC PIPING CO.,** 1277 E Schaaf Road, Suite 5, Cleveland, Ohio 44131, | ) ) ) ) |
| *Plaintiff,* | ) ) |
| vs. | ) ) |
| **BRIGADIER CONSTRUCTION SERVICES, LLC,** 2285 E Enterprise Parkway, Twinsburg, Ohio 44087 | ) ) ) ) ) |
| And | ) ) |
| **QBE AMERICAS, INC.,** One General Drive, Sun Prairie, Wisconsin 53596, | ) ) ) ) |
| *Defendants,* | ) ) |
| Also serve: | ) ) |
| **CT CORPORATION SYSTEM,** 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219, | ) ) ) ) |
| **(Statutory Agent for Defendants).** | ) |

## COMPLAINT FOR MONEY DAMAGES

This is an action pursuant to 40 U.S.C.A §3131 et seq. (the "Miller Act") brought in the name of the United States of America, for the use and benefit of the ABC Piping Co., ("ABC" or "Plaintiff") against Brigadier Construction Services, LLC ("Brigadier"), and QBE Americas, Inc.

1

18104120.1

("QBE") (collectively "Defendants"), to recover money damages incurred by the ABC Piping Co., on a federally-owned project for the construction of the Louis Stokes Cleveland Department of Veterans Affairs Medical Center operating room project located at 10701 East Boulevard Cleveland, Ohio 44106 ("Project").

In support of its Complaint, ABC avers as follows:

## PARTIES

1.	ABC is a corporation organized under the laws of the State of Ohio, with its principal place of business in Cleveland, Ohio.

2.	Upon information and belief, Brigadier is a limited liability company organized under the laws of the State of Ohio.

3.	Upon information and belief, QBE is a corporation organized under the laws of the State of Delaware, with its principal place of business in Sun Prairie, Wisconsin.

## JURISDICTION, AND VENUE

4.	ABC incorporates by reference all the preceding paragraphs of this Complaint as though fully rewritten herein.

5.	Venue is proper and mandatory in this judicial district pursuant to §3133(b)(3) of the Miller Act because the federal contract for the Project that is the subject of this action was performed in Cuyahoga County, Ohio, which is within this judicial District.

6.	Personal jurisdiction over Brigadier is conferred by the Miller Act because Brigadier contracted with the United States of America, acting through the Department of Veterans Affairs ("VA"), for the construction of the Project.

7.	Personal jurisdiction over QBE is conferred by the Miller Act because QBE, as surety, issued bond no. 32400001 (the "QBE Bond") in connection with Brigadier's contract with

the federal government for the Project.  A true copy of the QBE Bond is attached hereto as Exhibit 1.

8. Subject matter jurisdiction is conferred by the Miller Act.

9. This action is timely filed as ABC (either directly or through its subcontractors) worked on the Project through and inclusive of October 30, 2023, and ABC, Brigadier, and QBE entered an agreement to toll the statute of limitations on any claim arising from the Project on October 9, 2024 (the "Tolling Agreement"). A true and accurate copy of the Tolling Agreement is attached as Exhibit 2.

## INTRODUCTION

10. ABC incorporates by reference all the preceding paragraphs of this Complaint as though fully rewritten herein.

11. This is an action by ABC against Brigadier and QBE to recover money damages for breach of a Subcontract Agreement No. 202007-03 between ABC and Brigadier last dated December 7, 2020, as amended and/or supplemented (the "Subcontract"), as further detailed below, and for QBE's unjustified failure and refusal to fulfill its obligations to ABC as surety on the Project.

12. All of ABC's claims against the Defendants arise from or relate to ABC's work under the Subcontract as a HVAC contractor and material supplier on the construction procured by the VA and known generally as the VA Cleveland – Operating Room Renovation Project located in Cleveland, Ohio (the "Project").

## BACKGROUND FACTS

13. ABC incorporates by reference all the preceding paragraphs of this Complaint as though fully rewritten herein.

14. Brigadier entered into a contract ("Prime Contract") with the Department of Veterans Affairs ("VA") to serve as the prime contractor on the Project, which required Brigadier to furnish, among other things, services, materials, and equipment in furtherance of the Project.

15. In connection with the Project, Brigadier furnished to the VA a "Miller Act" bond, to which QBE, as surety, bound itself to pay jointly and severally with Brigadier, as principal, any and all unpaid amounts due to any person having a direct relationship with Brigadier and anyone in privity therewith for furnishing labor, material, or both in connection with the Project up to the stated penal sum.

16. The Miller Act requires that any action or suit on the QBE Bond be brought in the United States District Court for any district in which the work on the Project was to be performed and executed, and not elsewhere. 40 U.S.C.A. §3133.

17. Brigadier is the principal named in the QBE Bond and ABC is an obligee and intended beneficiary under the same.

18. Accordingly, pursuant to the QBE Bond, QBE agreed to bond Brigadier for the scope of work defined by Brigadier's contract with the VA, as well as any subsequent authorized modifications of that contract, and waived its right to notice of any such modifications.

19. QBE's obligations under the QBE Bond also obligated QBE to pay all lawful claims of subcontractors, lower-tier subcontractors, and materialmen of Brigadier that worked on the Project, and have claim for services, equipment, or materials furnished in furtherance of the Project.

20. On or about December 7, 2020, ABC entered into the Subcontract with the Brigadier.

4

18104120.1

21. The Subcontract and Subcontract Documents are too voluminous to attach to this pleading and, therefore, are incorporated by reference. The original Subcontract is in the custody or control of the Defendants, or its agents, representatives, or employees. The Defendants have access to a complete copy of the executed Subcontract Documents.

22. The scope of ABC's work under the Subcontract included the HVAC, fire suppression, and other mechanical work on the Project, which work is more fully described in the Subcontract Documents (the "Subcontract Work").

23. ABC performed its Subcontract Work for the Project in a good and workmanlike manner and pursuant to the plans, specifications, and other Subcontract Documents, as amended and/or supplemented, or as otherwise directed by Brigadier its agents and representatives.

24. On October 26, 2023, and during ABC's performance on the Project, the VA terminated Brigadier.

25. The VA's termination of Brigadier was alleged by the VA to be based on Brigadier's numerous breaches of the Prime Contract and inability to perform as obligated.

26. On October 26, 2023 Brigadier provided ABC with notice of Brigadier's termination. A true and accurate copy of the Brigadier Termination Notice is attached hereto as Exhibit 3.

27. Brigadier's termination was not caused in any way by ABC, ABC's work, ABC's subcontractors, or ABC's subcontractors' work. Brigadier was terminated, as alleged by the VA, solely for its own breaches of the Prime Contract and failure to perform as obligated.

28. As of the date of Brigadier's termination, ABC had completed approximately 75 percent of its Subcontract Work, including a substantial amount of predecessor work that would serve to connect later phases of the Project.

18104120.1

29. In addition to its Subcontract Work, at the time of Brigadier's termination, ABC had also completed a significant amount of additional and extra work at the direction of Brigadier, including demolition work detailed in change order no. 5. A true and accurate copy of change order no. 5 is attached hereto as Exhibit 4.

30. After Brigadier's termination, Brigadier requested that ABC submit two separate pay applications, one for labor and completed work as of Brigadier's termination, and the other for stored materials as of the date of Brigadier's termination.

31. Per Brigadier's direction, ABC submitted pay applications 10 and 11 ("Unpaid Applications"). True and accurate copies of the Unpaid Applications are attached hereto as Exhibit 5.

32. ABC properly substantiated the amounts billed, detailed the percentage of work completed during a walkthrough of the Project with QBE, Brigadier, and the VA on July 23, 2024, and provided all necessary documentation needed to bill for stored materials.

33. Also, at the time of Brigadier's termination, ABC had a claim for material and price escalation. Upon information and belief, Brigadier failed to submit this request for equitable adjustment or raise ABC's claim with the VA.

34. Likewise, at the time of Brigadier's termination, ABC's change order no. 5 remained unsigned, despite Brigadier having directed ABC to complete the work.

35. ABC is entitled to payment for all Subcontract Work, additional extra work, and stored materials that it furnished to the Project. All work, materials, equipment and services provided by ABC on the Project were accepted by Brigadier and ABC has satisfied all conditions precedent to payment under the Subcontract.

36. Despite ABC fulfilling its obligations to Brigadier through the date of Brigadier's termination, and despite repeated invoicing and demands for payment to Brigadier and QBE, Brigadier has without excuse failed and refused to pay ABC for all amounts due and owing ABC for the work and materials ABC furnished to the Project.

37. Additionally, to the extent Brigadier did not pay ABC for all the work the VA paid Brigadier, Brigadier owes ABC an amount not less than $949,893.03 to be proven at trial, plus interest (including but not limited to interest under the federal Prompt Payment Act applicable to construction contracts as set forth in FAR Regulation 52.232-27 ("Prompt Payment for Construction Contracts") and/or 31 U.S.C. §3901 *et seq.* (the "Prompt Payment Act"), which represents the balance due ABC for earned and unpaid retainage, base Subcontract Work, and, among other things, additional work and associated job impact damages, interest, and finance expenses.

38. Because Brigadier failed and/or refused to compensate ABC in full for the labor, materials, and services ABC delivered in furtherance of the Project, ABC was forced to make claim under the QBE Bond. A true and accurate copy of ABC's Payment Bond Claim is attached hereto as Exhibit 6.

39. Despite ABC timely making, and substantiating its Payment Bond Claim, QBE continues to ignore its obligations under the QBE Bond and has refused and failed to compensate ABC for the work and materials it furnished to the Project for the benefit of bond principal Brigadier.

40. The Defendants have failed to make payment to ABC in full. In total, ABC is owed an amount not less than $949,893.03 to be proven at trial, plus interest (including, but not limited

to, interest under the Prompt Payment Act), for labor and/or materials furnished in furtherance of the Project.

41. By virtue of ABC filing this action, ABC's Payment Bond claim is secured against the QBE Bond.

42. QBE, as surety for Brigadier under the QBE Bond, is liable to pay ABC for all amounts earned and due ABC for its work on the Project.

43. ABC waited patiently as Brigadier claimed it was trying to resolve any dispute with the VA. However, Brigadier and QBE have failed to provide ABC with updates on those discussions, leaving ABC in the dark. ABC's avenue to push forward its right to payment is this litigation

## COUNT I
**Breach of Subcontract and Additional Cost Claims (Against Brigadier)**

44. ABC incorporates by reference all the preceding paragraphs of this Complaint as though fully rewritten herein.

45. Brigadier's termination was not caused by ABC, its work, or any of its Subcontractors, or their work on the Project.

46. Brigadier's failure to compensate ABC in full for the materials, labor, and services provided by ABC prior and through the date of Brigadier's termination constitutes a breach of the Subcontract.

47. Brigadier also breached the Subcontract by failing to compensate ABC for the additional extra work directed by Brigadier and performed by ABC.

48. Brigadier failed to timely pay ABC for the Subcontract Work, and extra work, in breach of the Subcontract.

18104120.1

49. Brigadier failed to timely pay ABC for Stored Materials procured and secured for the Project in breach of the Subcontract.

50. Brigadier failed to timely pay ABC for retainage earned and due ABC.

51. Brigadier otherwise materially breached its duties under the Subcontract, including its implied duty of good faith and fair dealing under the Subcontract.

52. ABC substantially performed its obligations under the Subcontract, including all conditions precedent to payment up to and through the date of Brigadier's termination.

53. In addition, ABC took all reasonable action to mitigate its damages during the course of performing the Subcontract Work and associated extra work.

54. As a direct result of the breaches of the Subcontract described in the preceding paragraphs, ABC is entitled to recover from Brigadier under the Subcontract an amount not less than $949,893.03, plus interest (including, but not limited to, interest under the FAR and/or Prompt Payment Act) and attorneys' fees.

## COUNT II
**Unjust Enrichment Claim (Against Brigadier)**

55. ABC incorporates by reference all the preceding paragraphs of this Complaint as though fully rewritten herein.

56. Should it be determined that ABC's Subcontract with Brigadier is void, unenforceable, and/or inapplicable to the claims alleged in this lawsuit, ABC asserts an unjust enrichment claim against Brigadier as an alternate theory of liability.

57. Brigadier has benefitted from and been unjustly enriched by virtue of ABC's performance of the Subcontract Work and extra work, for which Brigadier has failed and refused to pay ABC.

58. Brigadier knew of and accepted the benefit of ABC's performance without objection.

59. ABC's furnishing of labor, services, and/or materials at increased cost to ABC was not gratuitous.

60. Brigadier received the benefit at the expense of and to the detriment of ABC.

61. ABC is entitled to recover a sum not less than $949,893.03 to be proven at trial from Brigadier under the doctrine of unjust enrichment and/or quantum meruit. ABC does not assert an unjust enrichment and/or quantum meruit claim against QBE.

## COUNT III
### Miller Act Claim on Payment Bond (Against Brigadier and QBE)

62. ABC incorporates by reference all the preceding paragraphs of this Complaint as though fully rewritten herein.

63. The United States of America brings this claim for the use and benefit of ABC in accordance with 40 U.S.C. §3131 *et seq.* (the "Miller Act").

64. ABC has a direct contractual relationship with Brigadier

65. Brigadier and QBE furnished the QBE Bond.

66. ABC supplied labor and material in connection with the prosecution of a portion of the work on the Project, for which it has not been paid in full, in an amount not less than $949,893.03.

67. ABC performed and supplied the last of the aforesaid amounts in labor and material more than ninety (90) days before the filing of this action.

68. ABC provided timely notice of its claim against the QBE Bond.

69. ABC performed and supplied the last of the aforesaid amounts in labor and material less than one year before the filing of ABC's Complaint.

70. At the time of the institution of this action, the unpaid balance owed to ABC for the aforesaid labor and material is not less than $949,893.03, which amount ABC is entitled to recover against the QBE Bond.

71. ABC reserves the right to amend its damage claim in this Count III for additional labor and material supplied in connection with the prosecution of a portion of the work on the Project.

72. ABC is entitled to recover from QBE not less than $949,893.03 pursuant to the terms of the QBE Bond.

**WHEREFORE,** under Counts I, II, and III, ABC demands and prays for:

A) Money judgment against the QBE and Brigadier, jointly and severally, in the amount not less than $949,893.03 to be proven at trial;

B) An award of any and all costs, expenses, prejudgment interest, and attorneys' fees; and

C) Such other legal and equitable relief against Defendants that the Court deems just and proper.

Respectfully submitted,

/s/ *Aaron S. Evenchik*
Aaron S. Evenchik (0073809)
Cesare P. Piermarini (0101453)
**HAHN LOESER & PARKS LLP**
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone: (216) 274.2450
Fax: (216) 297.4160
Email: aevenchik@hahnlaw.com
cppiermarini@hahnlaw.com

*Attorneys for Plaintiff*
*ABC Piping Co.*

18104120.1